**FILED**

**August 31, 2022**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **T.C.**

**No. 22-0172** (Braxton County 20-JA-50)


## MEMORANDUM DECISION


Petitioner Father B.H., by counsel Andrew Chattin, appeals the Circuit Court of Braxton County's February 2, 2022, order terminating his parental rights to T.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary Elizabeth Snead, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2021, the DHHR filed a child abuse and neglect petition against petitioner and the mother. The DHHR alleged that it received a referral regarding the mother's alleged substance abuse and, while investigating the matter, learned that petitioner had abandoned the child. The DHHR alleged that petitioner and the mother had been in a romantic relationship until the mother was approximately five months pregnant with the child, at which time the mother separated from petitioner due to his violent nature. The DHHR noted that the mother signed up for benefits through the DHHR when the child was one years old, triggering paternity proceedings with the Bureau for Child Support Enforcement. According to the DHHR, petitioner was served with a copy of the paternity suit, and signed for the same, but refused to participate in the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

proceedings. Specifically, petitioner failed to attend four separate paternity testing appointments. The DHHR alleged that petitioner knew or should have known that he was the father of the child, who was eleven years old at the time of the petition's filing, and that he had abandoned the child and failed to provide the child with any monetary or emotional support.

According to the guardian, petitioner initially could not be located and was served by publication. At an adjudicatory hearing in March of 2021, the circuit court adjudicated petitioner as an abusing parent. However, after the adjudicatory hearing, petitioner was determined to be incarcerated and, as such, his adjudication was reopened. The adjudicatory hearing was held on July 7, 2021, and petitioner appeared via videoconference from his place of incarceration. The DHHR presented the testimony of the mother, who stated that she and petitioner cohabitated around the time of the child's conception and that after their relationship dissolved, petitioner failed to contact or provide any support to the child. The DHHR also submitted paternity test results establishing that petitioner was the child's biological father.

Petitioner testified and admitted that he was the child's father, that he had known the mother was pregnant, and that they had discussed the possibility that he was the child's father. Following this testimony, the circuit court found that petitioner was the biological father of the child, that he was in a relationship with the mother at the time of conception, that he knew that he could be the father, that he was a party to a paternity action, and that he failed to provide any support for the child. The court further found that petitioner had not had contact with the child since she was an infant. Accordingly, the circuit court found that petitioner abandoned the child and adjudicated him as a neglectful parent.

The circuit court held a dispositional hearing in October of 2021. A Child Protective Services ("CPS") worker testified and recommended that petitioner's parental rights be terminated. The worker testified that petitioner had not had contact with the child since her birth and that he had provided no care or support for the child. Petitioner also failed to take any action through the court system in order to have a relationship with the child. The worker indicated that the child "doesn't even know her father" and has no desire to have a relationship with him.

Petitioner requested an improvement period and testified that he would comply with services if granted one. Petitioner admitted that he had two other children, one of whom he "[did not] have any rights to." Petitioner explained that he had previously been the subject of abuse and neglect proceedings with regard to an older daughter and that he had been accused of sexual abuse. Petitioner stated that he voluntarily relinquished his parental rights to the child in that case, but had been "found innocent" of the sexual abuse charges. Petitioner testified that he had been incarcerated since March of 2020 for multiple drug-related charges, including possession with intent to deliver heroin and manufacturing methamphetamine. Petitioner stated that he had been sentenced to three to twenty-five years of incarceration and would become eligible for parole the month after the dispositional hearing.

Petitioner claimed that the child's mother kept him from seeing the child. According to petitioner, he saw the child once when she was approximately three months old and then never heard from the child's mother again until March of 2020, when they had a single brief conversation over social media. Petitioner stated that, prior to that conversation, he did not have the mother's

phone number and could not find her on social media and, therefore, could not reach her. Petitioner claimed that he had not provided child support because he did not know how to find the child. However, he also claimed that he did not know the child was his until the instant proceedings and claimed that the mother was also in a relationship with another man around the time of the child's conception.

The circuit court took judicial notice of the prior proceedings and found that petitioner had little to no contact with the child since she was three months old. The circuit court found that petitioner knew of the child and did nothing to establish a bond or a relationship with her. Specifically, petitioner failed to provide any support, maintenance, or gifts for the child. The circuit court found that the child had not been in petitioner's custody since her birth and that petitioner's abandonment "created substantial emotional turmoil" for the child, who had no desire to have a relationship with petitioner. Based on the foregoing, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse or neglect in the near future and that there was no less restrictive alternative to the termination of his parental rights which would protect the health, safety, and welfare of the child.[2] Petitioner appeals the February 2, 2022, dispositional order.[3]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting him an improvement period. Petitioner claims that the DHHR could have provided services to petitioner while in prison and that there was a reasonable likelihood that he could have corrected the conditions of abuse or neglect as he "could have forged a relationship with his daughter had he been given the opportunity." Petitioner avers that the mother's actions

---

[2]The circuit court did not consider evidence presented regarding prior referrals or proceedings against petitioner as the DHHR failed to timely provide that evidence.

[3]According to the parties, the mother is successfully participating in her improvement period, and the child has begun transitioning back into the mother's care. The permanency plan for the child is reunification with the mother.

denied him the opportunity to have a relationship with his child and that he demonstrated his desire to have a relationship with her. Based on the foregoing, petitioner contends that the circuit court erred in terminating his parental rights. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

We find that petitioner failed to demonstrate that he was likely to fully participate in an improvement period. While petitioner testified that he would comply with an improvement period, his continued incarceration created a barrier to his ability to meaningfully participate in an improvement period. While petitioner claims that the DHHR could have provided him with services in prison, he failed to present any evidence in support of this argument. Indeed, petitioner fails to indicate what services could address his abandonment of the child. While petitioner blames the mother and claims she prohibited him from having a relationship with the child, the circuit court heard the testimony of the mother and petitioner regarding this issue and, ultimately, found that petitioner "did nothing to establish a relationship or bond with [the child]." We decline to disturb this credibility determination on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Moreover, petitioner's release on parole was not guaranteed, and he could remain incarcerated for up to twenty-five years. We have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4 (citation omitted). Based on the foregoing, we find no error in the circuit court's decision to deny petitioner's motion for an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(4) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "abandoned the child."

Here, the record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect on his own or with help. Due to his incarceration, petitioner was unable to comply with services aimed at remedying the conditions of abuse and neglect. While the

circuit court considered that petitioner would become parole eligible in November of 2021, there was no guarantee that he would be released. Absent his release on parole, petitioner will not discharge his sentence until after the child has reached the age of majority. Moreover, petitioner failed to establish a bond or a relationship with the child after her birth and had seen her only once in eleven years. The circuit court found that petitioner's abandonment of the child caused her significant emotional distress, and it considered the child's desire that petitioner's parental rights be terminated. Based on the foregoing, we cannot find that the circuit court erred in finding that there is no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future or that termination was necessary for the child's welfare.

While petitioner argues that the circuit court could have employed a less restrictive alternative to the termination of his parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the abovementioned evidence, we find no error in the circuit court's decision to terminate petitioner's parental rights to the child.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 2, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn